FILED
2026 Sep-09 PM 02:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL LETSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:24-cv-01649-HNJ |
| | ) | |
| LEGAL SERVICES ALABAMA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Michael Letson filed a complaint asserting four claims against Defendant Legal Services of Alabama ("LSA"). (Doc. 1). Count I claims LSA discriminated against Letson in the terms and conditions of his employment because of Letson's disability, in violation of Title VII of the Civil Rights Act of 1964 and 1991. (*Id.* at 6-7). Counts II, III, and IV, assert the state tort claims of Intentional Infliction of Emotional Distress; Invasion of Privacy and False Light; and Defamation, Libel, and Slander. (*Id.* at 7-8).

LSA filed a motion for judgment on the pleadings, or alternatively, for summary judgment. (Doc. 22). LSA argued Letson failed to file his discrimination complaint within ninety days of receiving his right-to-sue notice from the Equal Employment Opportunity Commission ("EEOC"). (Doc. 23 at 6-8). LSA also asserted Letson "cannot establish disability discrimination or retaliation under Title VII," (*id.* at 8), and

Letson's "state tort claims should be dismissed as they were filed outside the two-year statute of limitations," (*id.* at 9).

The following analyses will portray a material fact dispute as to whether Letson filed his discrimination complaint within the ninety-day period due to the three-day window for presumptive delivery of the right-to-sue notice by mail. Furthermore, although Letson cannot allege disability discrimination under Title VII, as disability does not constitute a protected class under that statute, the motion did not substantively challenge Letson's disability discrimination and retaliation claims on the merits. Finally, Letson failed to file his state tort claims within the two-year statute of limitations.

Therefore, the court **GRANTS** in part LSA's motion as to Count I's Title VII claims; **DENIES** the motion as to Count I's disability discrimination and retaliation claims; and **GRANTS** the motion as to the state law claims proffered in Counts II-IV. Accordingly, the court **DISMISSES WITH PREJUDICE** Counts II, III, and IV.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "Judgment on the pleadings under [Federal Rule of Civil Procedure] 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *BNSF Ry. Co. v. Ala. Dep't of Revenue*, No. 21-11371, 2026 WL 2210922, at *5 (11th Cir. July 31, 2026) (quoting *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)); *see also Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022) ("Judgment on the

pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." (quoting *Cannon v. City of W. Palm Beach*, 250F.3d 1299, 1301 (11th Cir. 2001))); *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1232-33 (11th Cir. 2005).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss." *EEOC v. Austal USA, LLC*, 389 F. Supp. 3d 1015, 1018 (S.D. Ala. 2019) (citations omitted). "The primary distinction between motions made under Rule 12(b)(6) and Rule 12(c) is one of timing." *In re Brizinova*, 592 B.R. 442, 459 (Bankr. E.D.N.Y. 2018); *see also Weeks v. Wyeth, Inc.*, 120 F. Supp. 3d 1278, 1282-83 (M.D. Ala. 2015) (discussing Rule 12's directives regarding when to file each type of motion). A party may move for judgment on the pleadings "[a]fter the pleadings are closed . . . ." Fed. R. Civ. P. 12(c); *see also Lillian B. ex rel. Brown v. Gwinnett Cnty. Sch. Dist.*, 631 F. App'x 851, 853 (11th Cir. 2015). "The pleadings are closed . . . when a complaint and answer have been filed." *Id.* (citing Fed. R. Civ. P. 7(a)).

"In determining whether a party is entitled to judgment on the pleadings, [the court] accept[s] as true all material facts alleged in the non-moving party's pleading, and [the court] view[s] those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). The court must "'treat as false the allegations in the answers that contradicted' the allegations" in the complaint.

*Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 928 (11th Cir. 2023) (cleaned up) (quoting *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006)) (citing 1 Richard A. Givens, MANUAL OF FEDERAL PRACTICE, § 4.31 (4th ed. 1991) ("For purposes of a Rule 12(c) motion, all controverted allegations in the pleadings of the moving party are treated as false.") (cleaned up)). "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Horsley*, 292 F.3d at 700 (citing *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir. 1999)). However, if, in the alternative, "a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Austal USA, LLC*, 389 F. Supp. 3d at 1018 (quoting *Perez*, 774 F.3d at 1335).

Moreover, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the movant sustains its burden, a non-moving party demonstrates a genuine issue of material fact by producing evidence by which a reasonable fact-finder could

return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (citation omitted). The non-movant sustains this burden by demonstrating "that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). In the alternative, the non-movant may "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116-17; *see also Doe v. Drummond Co.*, 782 F.3d 576, 603-04 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1168 (2016).

The "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151 (citation omitted). "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (citation omitted).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. In addition, a movant may prevail on summary judgment by submitting evidence "*negating* [an] opponent's claim," that is, by producing materials disproving an essential element of a non-movant's claim or defense. *Id.* at 323 (emphasis in original).

There exists no issue for trial unless the nonmoving party delineates evidence sufficient to merit a jury verdict in its favor; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249. That is, the movant merits summary judgment if the governing law on the claims or defenses commands one reasonable conclusion, but the court should deny summary judgment if reasonable jurors could "differ as to the import of the evidence." *Id.* at 250.

## BACKGROUND

On November 26, 2024, Letson filed a verified Complaint containing the following factual allegations, taken in the light most favorable to Letson, the non-moving party. (Doc. 1).

In or around 2005, Letson began working for LSA, a non-profit organization which provides legal representation for low-income Alabamians. (*Id.* at ¶¶ 2, 19). He initially worked in the Florence, Alabama, office, which closed in 2012, at which time LSA eliminated his position. (*Id.* at ¶ 19). LSA rehired Letson in 2017 as a staff attorney in its Birmingham, Alabama, office. (*Id.*).

In 2020, during the COVID-19 pandemic, the Birmingham LSA office closed, and its staff worked primarily from home. (*Id.* at ¶ 20). In August 2021, after LSA's employees returned to work in the office, Letson contracted COVID-19. (*Id.*). He informed his supervisor of his illness. (*Id.*). In October 2021, Letson's health deteriorated, and he suffered memory lapses and neurological dysfunction. (*Id.*). Letson informed his supervisor of his health issues and sought medical treatment for his symptoms. (*Id.*).

In November 2021, Letson received a diagnosis of having suffered a stroke. Letson informed LSA of the diagnosis and his resulting physical and mental limitations. (*Id.* at ¶ 21). Letson requested reasonable accommodations for these limitations at that time, but his supervisor denied the request. (*Id.*).

In December 2021, Letson returned to his physician. (*Id.* at ¶ 22). The "doctor was seriously concerned about [Letson's] disability . . . and how it was affecting his ability to work." (*Id.*). In January 2022, Letson requested LSA provide him with a legal assistant to accommodate his disability. (*Id.* at ¶ 23). LSA denied the request. (*Id.*). In February 2022, Letson applied for short-term disability via the LSA benefits program. (*Id.*).

Letson's physician placed Letson on medical leave as of March 1, 2022. (*Id.* at ¶ 24). Shortly thereafter, LSA initiated termination of Letson's employment. (*Id.*). "LSA made no effort whatsoever to accommodate Letson's illness or disability." (*Id.*). Moreover, at the time of his termination, "Letson was not guilty of any misconduct as alleged by LSA." (*Id.* at ¶ 21). LSA discharged Letson from his employment with the organization on March 20, 2022. (*Id.* at ¶ 24).

Letson asserts his termination amounts to discrimination "because of [his] disability and retaliation based on [his] opposition to such discrimination . . . ." (*Id.* at ¶ 29). He alleges LSA "maintain[ed] a practice of discrimination against disabled employees," (*id.* at ¶ 12), including "subjecting [them] to harsh and unreasonable performance standards," (*id.* at ¶ 13), "terminating, suspending[,] or otherwise disciplining" disabled employees "while not taking such actions against non-disabled employees for the same or similar conduct," (*id.* at ¶ 14), subjecting disabled employees "to humiliation, embarrassment[,] and invasion of their privacy," (*id.* at ¶ 15), and "pressur[ing] and coerci[ng them] to abandon employment" with LSA, (*id.* at ¶ 17).

On August 5, 2022, Letson filed a charge of discrimination with the EEOC. (*Id.* at ¶ 25). "On or about August 27, 2024, the EEOC issued a Determination and Notice of Rights which included a notice of a right to sue." (*Id.*). This notice represented the EEOC's final administrative action regarding Letson's charge. (*Id.* at ¶ 26).

On November 26, 2024, Letson filed a verified complaint alleging several claims; he labeled the first count of his pleading as a Title VII claim and the other three counts as emanating from state-law claims. (Doc. 1). LSA filed a motion for judgment on the pleadings, or alternatively, for summary judgment. (Doc. 22). Letson did not file any response to LSA's motion.[1]

---

[1] Letson's failure to respond to LSA's motion does not automatically doom his claims. Courts must adjudicate summary judgment motions on the merits, even in the event a non-movant fails to respond to a motion. *See Embry v. Carrington Mortg. Servs., LLC*, No. 24-13352, 2025 WL 3101715, at *3 (11th Cir. Nov. 6, 2025) ("We have held that 'the district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact.'" (quoting *Trs. of Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps. v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004))); *see also United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."). The decision in *Embry* based its principle on a prior version of Federal Rule of Civil Procedure 56(e), "which provide[d] that where 'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party[,]'" 2025 WL 3101715, at *3 (emphasis in original), and the decision extrapolated that "'summary judgment would be appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Trs. Of Cent. Pension Fund*, 374 F.3d at 1039).

Although Rule 56(e) no longer exists in the quoted form due to amendments in 2009 and 2010, the principle *Embry* depicted persists in its current version. Rule 56(a) declares a "court shall grant summary judgment *if* the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," and Rule 56(e)(3) provides that in the event a party "fails to properly address another party's assertion of fact," a court may "grant summary judgment *if* the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it . . . ."

## ANALYSIS

### I. No Time Bar Precludes Letson's Employment Discrimination Claims, Which He Filed Within the Ninety-Day Window of Presumptive Delivery of the EEOC's Notice of His Right to Sue.

Legal Services of Alabama seeks dismissal of Letson's discrimination claims, asserting he did not file this case within 90 days of receiving notice from the EEOC of his right to sue.

> An employee must exhaust administrative remedies before filing a complaint of discrimination under Title VII of the Civil Rights Act and Title I of the Americans with Disabilities Act. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (Title VII); *see Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (Americans with Disabilities Act). "The first step down the path to exhaustion is filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC")." *Wilkerson*, 270 F.3d at 1317. If the Commission determines after an investigation "that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify" the employee. 42 U.S.C. § 2000e-5(b). When the employee receives a notice of dismissal from the Commission, she has 90 days to file a civil action against the employer. *Id.* § 2000e-5(f)(1).

*Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1339-40 (11th Cir. 2017) (cleaned up); *see also Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000) (citing *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1339-41 (11th Cir. 1999) ("Title VII . . . actions may not be brought more than 90 days after a complainant has adequate notice that the EEOC

---

The foregoing principle inheres likewise on the review of a Rule 12(c) motion when an adverse party fails to respond to such motion, as the applicable standard requires inherently the same finding to occasion a dismissal. *See Carson v. Monsanto Co.*, 72 F.4th 1261, 1266 (11th Cir. 2023) ("'Judgment on the pleadings *is appropriate* where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.'") (emphasis added, citation omitted).

has dismissed the Charge.")); *Zillyette*, 179 F.3d at 1339 ("It is settled law that, under the [Americans with Disabilities Act ("ADA")], plaintiffs must comply with the same procedural requirements to sue as exist under Title VII of the Civil Rights Act of 1964."); *Amaechi v. Ace Hardware Corp.*, No. 2:24-CV-00228-SCJ, 2026 WL 673459, at *1 (N.D. Ga. Feb. 4, 2026) (citing *Wilcox v. Corr. Corp. of Am.*, 603 F. App'x 862, 866 (11th Cir. 2015)), *appeal dismissed,* No. 26-10731-DD, 2026 WL 1597196 (11th Cir. May 18, 2026); *Goodwin v. Strickland Paper Co.*, No. 2:22-cv-01486-AMM, 2025 WL 756022, at *2 (N.D. Ala. Mar. 10, 2025), *appeal dismissed,* No. 25-11127-AA, 2025 WL 2823594 (11th Cir. July 16, 2025).

"Importantly, where a defendant in a Title VII or ADA discrimination case asserts that the plaintiff has not satisfied all conditions precedent to filing suit, . . . the plaintiff 'bears the burden of proving that the conditions precedent . . . have been satisfied . . . .'" *Jackson v. Meadwestvaco Coated Bd., Inc.*, No. 3:09-cv-695-MEF, 2010 WL 4000614, at *5 (M.D. Ala. Sept. 22, 2010) (quoting *Jackson v. Seaboard Coast Line R.R., Co.*, 678 F.2d 992, 1010 (11th Cir. 1982)) (citing *Maynard*, 256 F.3d at 1262), *report and recommendation adopted,* No. 3:09-cv-695-MEF, 2010 WL 3999084 (M.D. Ala. Oct. 12, 2010); *see also Robbins v. Vonage Bus., Inc.*, 819 F. App'x 863, 867 (11th Cir. 2020) ("The plaintiff has the burden of showing that he filed his complaint within the 90-day window if the defendant contests the issue." (citing *Green v. Union Foundry Co.*, 281 F.3d 1229, 1234 (11th Cir. 2002))); *Rowan v. Blue Origin Ala., LLC*, No. 5:23-cv-00055-MHH, 2026 WL 607851, at *5 (N.D. Ala. Mar. 4, 2026) ("Once a defendant contests the issue of

whether the complaint was filed timely, the plaintiffs bear the burden of showing that they have met the requirement." (quoting *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005))).

The EEOC issued a digitally signed and dated right-to-sue notice regarding Letson's charge on August 27, 2024. (*See* doc. 1 at 16).[2] Letson filed his Complaint on November 26, 2024, initiating this civil action. (*See* doc. 1). November 26 represents the ninety-first day after the EEOC issued the right-to-sue notice. Therefore, if Letson received the notice on the day the EEOC issued it, he would not have filed his Complaint in time. *See Lehberger v. Moul*, No. 5:25-cv-1142-HDM, 2026 WL 1949225, at *3 (N.D. Ala. July 6, 2026) (citing, *inter alia*, *Norris v. Fla. Dep't of Health & Rehab. Servs.*, 730 F.2d 682, 682-83 (11th Cir. 1984) ("Courts in the Eleventh Circuit interpret the ninety-day rule strictly in employment cases and will dismiss complaints filed even one day late.")); *Jackson v. Alachua Cnty. Bd. of Cnty. Comm'rs*, No. 1:24-cv-101-MW-MAF,

[2] Letson attached his EEOC charge and right-to-sue notice to his complaint and incorporated them by reference. (*See* doc. 1 at ¶ 25). Federal Rule of Civil Procedure 12(d) provides "[i]f, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Nevertheless, "that[ is] not *always* the case." *McKleroy v. Jacksonville Health & Rehab., LLC*, No. 1:19-cv-01414-CLM, 2019 WL 6133849, at *2 (N.D. Ala. Nov. 19, 2019) (emphasis in original) (holding the court could consider the plaintiff's EEOC charge while ruling on the defendant's Rule 12(b) motion to dismiss without converting it into a motion for summary judgment). "The court may consider an extraneous document . . . if (1) the document is central to the plaintiff's claim, and (2) its authenticity is not challenged." *Id.* (citing *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999)); *see also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (applying this 'incorporation by reference' doctrine to motions for judgment on the pleadings under Rule 12(c)). Therefore, the court may consider the EEOC charge and the right-to-sue notice in this motion for judgment on the pleadings without converting it into a motion for summary judgment.

2026 WL 719516, at *1 (N.D. Fla. Feb. 26, 2026) ("A filing even one day late warrants dismissal." (citations omitted)), *report and recommendation adopted,* No. 1:24cv101-MW/MAF, 2026 WL 715786 (N.D. Fla. Mar. 13, 2026); *Amaechi*, 2026 WL 673459, at *1 ("It is 'well established authority [in] this circuit that federal complaints filed even one day after the expiration of this 90 day period are untimely and, accordingly, subject to dismissal pursuant to a motion . . . .'" (quoting *Brown v. Consol. Freightway*, 152 F.R.D. 656, 658 (N.D. Ga. 1993))).

Based upon the digital signature affixed to the right-to-sue notice, the EEOC issued its right-to-sue notice to Letson or his attorney on August 27, 2024. *See Robbins*, 819 F. App'x at 867 n.5 ("Receipt" of a right-sue-notice, for purposes of commencing the 90-day filing period, "may be by the plaintiff, the plaintiff's counsel, or counsel's law office." (citations omitted)). However, in his verified Complaint, Letson does not state the exact time and method he received the right-to-sue notice. (*See* doc. 1 at ¶ 25 ("On or about August 27, 2024, the EEOC issued a Determination and Notice of Rights which included a notice of a right to sue.")). Rather, Letson attests under oath his "suit is being brought within 90 days of the receipt by plaintiff of notice of [the] final agency administrative action . . . ." (*Id.* at ¶ 27).

Furthermore, the notice advises Letson to file suit within 90 days of receipt of the notice, and it counsels that receipt "generally occurs on the date that your (or your representative) view [the] document." (*Id.* at 16.) The record contains no indication when Letson and his attorney viewed the notice, except for the circumstantial evidence

provided by the verified Complaint that he timely filed his pleading.

Moreover, the notice references the mailing addresses of Letson and the attorneys litigating the charge, yet it does not include any email addresses. And the enclosure included with the notice provides that receipt of the notice "generally means the date when you (or your representative) opened this email or mail." (*Id.* at 18). The foregoing references to a mailed notice depicts Letson (or his representative) may have received the notice via mail.

As uncertainty remains regarding the exact date on which Letson received the notice, at this stage the court applies "a presumption of three days for receipt by mail, akin to the time period established in Fed. R. Civ. P. 6(e)." *Kerr*, 427 F.3d at 952 (quoting *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 404 (5th Cir. 1974), *rev'd on other grounds,* 424 U.S. 747 (1976)); *see also id.* at 953 n.9 (citing *Zillyette*, 179 F.3d at 1342). Pursuant to this presumption, Letson would have received the right-to-sue notice on August 30, 2024, three days after the EEOC issued it. Thus, he needed to file a complaint by November 28, 2024, 90 days later. Accordingly, his November 26 Complaint demonstrates a timely filing.

To be sure, the court recognizes Letson may have received an email notification of his right-to-sue notice on August 27, 2024, the same day the EEOC issued the notice. Notably, "[i]n recent years, the EEOC has transitioned to electronic communications to deliver right-to-sue notices." *Warren v. Grand S. Senior Living*, No. 1:25-cv-882-RAH-SMD, 2025 WL 3636897, at *2 (M.D. Ala. Nov. 24, 2025) (citing *Nascimben v. Feld Ent.,*

*Inc.*, No. 8:24-cv-98-WFJ-SPF, 2024 WL 3673706, at *3 (M.D. Fla. Aug. 6, 2024) ("Apparently, giving notice using the postal service is no longer automatic, and the EEOC may use exclusively email to send notice.")), *report and recommendation adopted,* No. 1:25-cv-00882-RAH, 2025 WL 3634344 (M.D. Ala. Dec. 15, 2025).

"Though the Eleventh Circuit has yet to address the definition of 'receipt' when the EEOC emails to the parties a portal link containing its decision, the consensus among courts is that the ninety-day clock starts on the date that EEOC emails the party a notice that it posted a decision." *Lehberger*, 2026 WL 1949225, at *3 (citations omitted); *see also, e.g.*, *Goodwin*, 2025 WL 756022, at *6 ("[T]he EEOC's August 23, 2022, email provided [Plaintiff's attorney] with notice that the EEOC had terminated the investigation of Mr. Goodwin's claim and that a [right-to-sue notice] had been issued. That [the attorney] first viewed the email at a later date is inconsequential. She could have viewed it a day later, a week later, or a month later. Whenever she viewed it, the email charged her with notice that at the latest, a lawsuit had to be commenced within ninety days of August 23, 2022."); *Warren*, 2025 WL 3636897, at *2 (collecting cases) ("While the Eleventh Circuit has not addressed when an EEOC email communication is presumed received, district courts within the Eleventh Circuit have concluded that the email is received—and the 90-day filing deadline begins to run—on the day the email is sent."); *Penson-Johnson v. U.F. Health Shands Hosp.*, No. 1:24cv176-AW-MAF, 2025 WL 1524493, at *2 (N.D. Fla. Feb. 27, 2025) ("If the date of receipt is in dispute, courts 'ordinarily presume that a mailing is received three days after its issuance.' . . .

Unfortunately, the presumption does not apply because the Notice was not mailed to the parties using the United States Postal Service. Rather, it was provided by electronic delivery. . . . The parties do not dispute that fact." (quoting *Robbins*, 819 F. App'x at 867)), *report and recommendation approved,* No. 1:24-cv-176-AW-MAF, 2025 WL 1517807 (N.D. Fla. May 28, 2025); *Lax v. Mayorkas*, 20 F.4th 1178, 1182 (7th Cir. 2021) (holding the ninety-day filing window commenced when the plaintiff received the email, not one day later, when he opened the attachment containing the final agency decision); *McDonald v. St. Louis Univ.*, 109 F.4th 1068, 1071 (8th Cir. 2024) ("When counsel received an email from the EEOC telling them to check their EEOC portal, the [ninety]-day period began to run." (quotation omitted)). *But see Rowan*, 2026 WL 607851, at *6 ("Viewing this evidence in the light most favorable to Mr. Rowan, Blue Origin can demonstrate from the EEOC activity log that Mr. Rowan received an email from the EEOC on or close to September 28, 2022, but the log indicates only that the email informed Mr. Rowan 'that a new document [wa]s available to download.' . . . Therefore, the September 28 email alone did not provide Mr. Rowan with adequate notice that the EEOC had declined to pursue his charge administratively and that he must file a lawsuit within 90-days if he wished to pursue a claim against Blue Origin." (first alteration in original, second alteration supplied) (citation omitted)); *García-Gesualdo v. Honeywell Aerospace of P.R., Inc.*, 135 F.4th 10, 17 (1st Cir. 2025) ("[W]e agree with García-Gesualdo that the EEOC's first two emails did not provide notice . . . . [E]lectronically provided right-to-sue letters present more complicated questions and, accordingly, there is a limit

to the applicability of case law that likens traditionally mailed notices to situations where notices are emailed, especially where, like here, the right-to-sue letter is not attached to the email.").

However, unlike the foregoing cases, which all referenced record evidence the plaintiffs concerned received electronic notices from the EEOC, the record presently before the court does not indicate "the manner in which [Letson] received the Right to Sue Notice." *Amaechi*, 2026 WL 673459, at *3. The verified complaint, the answer, the motion for judgment on the pleadings, and the attached documents do not contain any evidence Letson received electronic notices from the EEOC.

Nonetheless, LSA beseeches the court to take judicial notice of the EEOC's online platform. (*See* doc. 23 at 3 n.1). Federal Rule of Evidence 201 permits judicial notice of facts "not subject to reasonable dispute" because they persist "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under Rule 201, "a court '*may* take judicial notice on its own' or '*must* take judicial notice if a party requests it and the court is supplied with the necessary information.'" *Lodge v. Kondaur Cap. Corp.*, 750 F.3d 1263, 1273 (11th Cir. 2014) (emphasis in original) (quoting Fed. R. Evid. 201(c)).

Furthermore,

> a court has "wide discretion" to take judicial notice of appropriate adjudicative facts at any stage in a proceeding . . . . *See* Fed. R. Evid. 201(d); *Dippin' Dots, Inc. v. Frosty Bites Distribut., LLC*, 369 F.3d 1197, 1204-05 (11th

> Cir. 2004). Nevertheless, the taking of judicial notice of facts is "a highly limited process." *Dippin' Dots, Inc.*, 369 F.3d at 1205 (quotation marks omitted). "The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court." *Id.* (quotation marks omitted).

*Lodge*, 750 F.3d at 1273.

While the court may take judicial notice the online platform exists and of its typical operating process, the notice alone does not represent a sufficient basis for determining Letson received electronic EEOC notices in this case. The mere operation of the platform does not demonstrate Letson opted-in to electronic notifications. Nor does the existence of the platform substantiate the system operated as designed in the circumstances at bar, particularly considering the notice references mail notification. The court may take judicial notice of the EEOC's online notification procedures, but it cannot assume the truth of the information contained therein, particularly a mere assumption that Letson and his attorney received email notification of the right-to-sue notice on August 27, 2024. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (holding court may take judicial notice of public documents filed with the Securities Exchange Commission "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents"); *Losch v. Nationstar Mortg. LLC*, No. 22-12421, 2024 WL 1282459, at *2 (11th Cir. Mar. 26, 2024) ("A court may, of course, take judicial notice of a pleading. . . . That means that the court takes judicial notice that (a) the pleading was filed and (b) the pleading contains

certain allegations. The court does not take judicial notice of the truth of the allegations contained in the pleading." (citing, *inter alia*, *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."))); *Smith v. Intel Corp.*, 745 F. Supp. 3d 853, 861-62 (N.D. Cal. 2024) (judicially noticing exhibits, including "publicly available government or government-affiliated webpages" and a document "downloaded from a government-maintained website," "as the accuracy of their contents is not subject to reasonable dispute," but declining to "assume their truth") (citations omitted); *Eagle Star Rock Prods. LLC v. PCC Structurals, Inc.*, 756 F. Supp. 3d 1062, 1077-78 (D. Or. 2024) ("While a court may take judicial notice of matters of public record, it may not notice disputed facts contained in such records. . . . Under this exception, courts 'routinely take judicial notice of letters published by the government . . . as well as records and reports of administrative bodies.' . . . The items PCC identifies are publicly available records of state or federal administrative agencies. This Court concludes that these documents are matters of public record and grants the request for judicial notice on that basis. . . . This Court will . . . limit the judicially noticed fact in each instance to the existence of the documents and not the truth of the matters asserted therein.") (citations omitted); *Grasty v. Cambridge Integrated Servs. Grp., Inc.*, No. 12 C 9141, 2014 WL 5543933, at *4 (N.D. Ill. Nov. 3, 2014) ("Cambridge could have relied on the EEOC's FOIA response if it were subject to judicial notice, but the response—insofar as it is used for the truth of the

EEOC's statement that it did not receive Grasty's intake questionnaire—is not properly subject to judicial notice. . . . The EEOC's statement is subject to reasonable dispute; its recordkeeping practices, like those of any large organization, are by their very nature not free of error, and Grasty avers not only that she mailed the questionnaire to the agency's Chicago District Office, but also that an EEOC employee told her that the EEOC had received it.").

Therefore, viewing the facts in the light most favorable to Letson, the court discerns no evidence Letson filed an untimely complaint with application of the three-day mail presumption. *See Amaechi*, 2026 WL 673459, at *3 ("The Court finds no authority dictating that the three-day mail presumption does not apply when plaintiff fails to allege the manner in which []he received notice."). If LSC proffers additional evidence Letson untimely filed his Complaint, then the court will consider such evidence appropriately.[3]

[3] Typically, a statute of limitations violation constitutes an affirmative defense on which a defendant sustains the burden of persuasion. *See* Fed. R. Civ. P. 8(c)(1) (listing statute of limitations as an affirmative defense); *Smith v. Duff & Phelps, Inc.*, 5 F.3d 488, 492 n.9 (11th Cir. 1993) ("It is beyond dispute that the defendants have the burden of proof in establishing the elements of the affirmative defense of the statute of limitations."); *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 974 (11th Cir. 2007) (declaring defendant sustained "the burden of proving the affirmative defense of a statute-of-limitations bar") (citation omitted). As a result, assessing "when the statute of limitations period begins is a question of fact" and "'cannot be determined upon motion for summary judgment if there is a genuine question as to when it began to run.'" *Boneta v. Am. Med. Sys., Inc.*, 524 F. Supp. 3d 1304, 1310 (S.D. Fla. 2021) (quoting *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999), *amended in part,* 211 F.3d 1224 (11th Cir. 2000)). *See also Smith*, 5 F.3d at 494 (holding plaintiff "entitled to have the factual questions underlying the limitations issue determined by an actual jury"); *Alaska Air Grp., Inc. v. Anthem Inc.*, No. 2:21-CV-1209-RDP, 2023 WL 12166895, at *5 (N.D. Ala. Feb. 21, 2023) ("'The commencement of the statute of limitations is a question of fact.'" (citing *Morton's Mkt.*, 198 F.3d at 828)).

However, if a defendant contests whether a plaintiff has timely filed a complaint within 90 days of the EEOC issuing a right-to-sue notice, the plaintiff bears the burden of persuasion on that limitations issue. *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005). *See also Robbins v. Vonage Bus., Inc.,* 819 F. App'x 863, 866-67 (11th Cir. 2020) (depicting ADA claimants sustain the burden on the same procedural requirement). Notably, some decisions maintain courts may decide the issue via summary judgment (ostensibly assuming no disputable issues of facts) or, critically, an evidentiary hearing rather than trial. *See Blair v. Brennan*, No. 8:17-CV-395-T-30AEP, 2017 WL 2538564, at *2 (M.D. Fla. June 12, 2017) ("Because courts must make findings of fact regarding when a plaintiff and/or his attorney received the FAD [Final Agency Decision] in order to determine whether an action was timely filed, courts tend to decide this issue at summary judgment or after holding an evidentiary hearing." (citing *Kerr*, 427 F.3d at 948 (summary judgment); *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) (summary judgment); *Law v. Hercules, Inc.*, 713 F.2d 691, 692 (11th Cir. 1983) (summary judgment); *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1243 (11th Cir. 1982) (reversing dismissal and remanding for an evidentiary hearing))); *Fields v. DeJoy*, No. 7:24-CV-01182-RDP, 2025 WL 1436563, at *3 (N.D. Ala. May 19, 2025) (same).

One notes, however, that the only case cited for the evidentiary hearing proposition, *Lewis*, *supra*, involved a subject matter jurisdiction hearing. *See Lewis v. Connors Steel Co.*, No. 79-G-1285-S, 1980 WL 313, at *1 (N.D. Ala. Aug. 12, 1980), *rev'd, Lewis*, *supra*. That is, the *Lewis* decisions arose during a period when the timely-filing issue presented a jurisdictional matter susceptible to independent fact adjudication by presiding judges, which no longer constitutes the law. *See Goldstar Props., LLC v. Angel*, No. 24-14118, 2025 WL 2682723, at *2 (11th Cir. Sept. 19, 2025) (declaring Federal Rule of Civil Procedure 12(b)(1) factual attacks "'challenge subject matter jurisdiction in fact, irrespective of the pleadings,'" and on such dispositions a court "'may consider extrinsic evidence such as testimony and affidavits'" and "'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case'") (citations omitted); *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1342 (11th Cir. 2017) ("The timely-filing requirements of Title VII of the Civil Rights Act and Title I of the Americans with Disabilities Act are non-jurisdictional . . . .").

To be sure, in *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit held courts may convene evidentiary hearing to resolve factual disputes arising in motions seeking dismissal for failure to exhaust administrative remedies. The Court's decision in *Tillery v. United States Dep't of Homeland Sec.*, 402 F. App'x 421 (11th Cir. 2010), extended that principle to the Title VII context. As one court discerned, however, "both *Bryant* and *Tillery* involved alleged failures to exhaust administrative remedies, whereas . . . an allegedly untimely filing of a Title VII lawsuit, after administrative exhaustion, is akin to a statute-of-limitations issue and should be reviewed as such." *Davidson v. Hyundai Transys Georgia Seating Sys., LLC*, 833 F. Supp. 3d 1296, 1302 (M.D. Ala. 2026) (citing *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1315 (11th Cir. 1990) ("[A] Title VII plaintiff complies with the ninety-day *statute of limitations* simply by filing the complaint." (emphasis added)); *Howell v. Dep't of the Army*, 975 F. Supp. 1293 (M.D. Ala.) (noting that some "courts regard [Title VII] regulatory deadlines applying to federal employee lawsuits against the government as akin to statutes of limitations"), *aff'd,* 130 F.3d 445 (11th Cir. 1997)).

Hence, if LSC intends to proffer additional evidence for the court's determination of the timely-filing issue, it should discuss whether the court may assess such evidence via an evidentiary hearing or at trial by jury.

## II. The Court Must Construe Letson's Title VII Claim for Disability Discrimination as Arising Under the Americans with Disabilities Act ("ADA").

Letson's first claim for relief asserts employment discrimination under the Civil Rights Acts of 1964 and 1991: "Defendant has discriminated against the Plaintiff in the terms and conditions of plaintiff's employment because of plaintiff's disability and because plaintiff opposed unlawful discrimination by defendant all in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991." (Doc. 1 at ¶ 35). Letson, with the benefit of representation by counsel, does not specifically reference the ADA in the first count as a basis for remedying the alleged disability discrimination. (*See* doc. 1).

"Title VII does not prohibit *disability* discrimination at all—that, of course, is the provenance of the ADA . . . ." *Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 19 (D.D.C. 2014) (emphasis original). "Consequently, complaints of discrimination 'based only on a plaintiff's purported disability, which is not a characteristic enumerated in Title VII,' cannot serve as the statutorily protected activity that underlies a Title VII retaliation claim." *Id.* (cleaned up) (citing *Branscomb v. Sec'y of Navy*, 461 F. App'x 901, 906 (11th Cir. 2012)); *see also Branscomb*, 461 F. App'x at 906 (dismissing Title VII claim and remanding claims under the ADA and the Rehabilitation Act of 1973 for further consideration) ("Here, we conclude from the record that the district court did not err in granting the Navy's motion for summary judgment as to Brancomb's claims under Title VII. Branscomb alleged employment discrimination based only on his purported

disability, which is not a characteristic enumerated in Title VII."); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (dismissing Title VII claim as improper and ADA claim as abandoned on summary judgment) ("Courts have explicitly held that Title VII does not cover . . . disability discrimination claims. . . . The appropriate remedy for . . . disability discrimination claims comes from the . . . ADA . . . ." (citations omitted)); *Collins v. Ala. State Univ.*, No. 2:23-cv-231-RAH-CWB, 2025 WL 1070437, at *4 (M.D. Ala. Feb. 3, 2025) (collecting cases) (construing *pro se* complaint to allege both Title VII and ADA claims) ("Given that disability is not a protected characteristic covered by Title VII, summary judgment is due to be entered in favor of [Defendant] on all claims purportedly arising under Title VII."), *report and recommendation adopted,* No. 2:23-cv-00231-RAH, 2025 WL 928821 (M.D. Ala. Mar. 27, 2025); *Aluko v. People Servs./Emp. Right*, No. 1:23-cv-02142-ELR-LTW, 2024 WL 5700345, at *3 (N.D. Ga. May 16, 2024) ("As Defendant correctly notes, Plaintiff cannot bring a Title VII claim for disability-based discrimination or retaliation."), *report and recommendation adopted,* No. 1:23-CV-02142-ELR, 2024 WL 5699863 (N.D. Ga. Sept. 18, 2024); *Ruffin v. Bank of Am.*, No. 12-1677-GMS, 2014 WL 3828408, at *2 (D. Del. Aug. 1, 2014) ("Disability is not covered under Title VII, and a court must dismiss a disability discrimination suit brought under Title VII, even if filed by a *pro se* plaintiff. . . . Disability claims must be brought under the Americans with Disabilities Act ('ADA'), not Title VII.") (citing *Blair v. Wal-Mart Stores Inc.*, No. 03-717-GMS, 2004 WL 2283560, at *2-3 (D. Del. Sept. 30, 2004)). Based upon the foregoing precedent and authority, Letson's Title VII claims

warrant dismissal with prejudice.

That determination does not dispose of Count I, however, because LSA did not move to dismiss Letson's disability discrimination and retaliation claims on the merits. Sure, Letson failed to cite the ADA in any of his claims for relief. (*See* doc. 1). Nevertheless, Letson references the ADA in his factual allegations as well as his EEOC Charge. (*Id.* at ¶ 24 ("Letson was discriminated against based on his disability when he was denied a reasonable accommodation and discharged, in violation of the Americans with Disabilities Act of 1990, as amended."), *id.* at 13 (alleging discrimination based on disability "in violation of the Americans with Disabilities Act of 1990, as amended")). As prevailing precedent and authority portrays, Letson sufficiently pleaded, under oath, disability discrimination and retaliation claims, particularly given the prevailing pleading standard.

Although Federal Rule of Civil Procedure 8 requires pleading of a plausible claim, it does not require a highly technical, denomination of claims:

> Rule 8 provides that to state a claim for relief, a pleading must contain the following: (1) "a short and plain statement of the grounds for the court's jurisdiction[;]" (2) "a short and plain statement of the claim showing the pleader is entitled to relief;" and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). The short and plain statement of the claim "need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (alteration omitted). Rule 8 also makes clear that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). *See also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513-14 (2002) (explaining that "[t]he liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of the claim").

> Moreover, the "Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957), *abrogated in part by Twombly*, 550 U.S. at 563; *Harris v. Garner*, 216 F.3d 970, 996 (11th Cir. 2000) (same). See also 6-107 Collier Bankruptcy Practice Guide P. 107.03 ("[Rule] 8(e) provides that 'pleadings must be construed so as to do justice.' This rule is at the very heart of the rules regarding pleadings. 'Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end.'") (quoting *Maty v. Grasselli Chem. Co.*, 303 U.S. 197, 200 (1938)); *De Loach v. Crowley's, Inc.*, 128 F.2d 378, 380 (5th Cir. 1942). ("Just what [Rule 8(e)] means is not clear, but it excludes requiring technical exactness, or the making of refined inferences against the pleader, and requires an effort fairly to understand what he attempts to set forth.").

*Beem v. Ferguson*, 713 F. App'x 974, 979 (11th Cir. 2018) (alterations in original) (footnotes omitted); *see also* 2 – MOORE'S FED. PRAC. – CIV. § 8.10 (2020) ("[P]leadings should not be dismissed for technical defects. The pleading should be construed as a whole, to determine whether adequate notice of the claim or defense is presented.").[4]

[4] Citing, *inter alia, Reiter v. Cooper*, 507 U.S. 258, 263 (1993) (counterclaims mistakenly designated as defenses considered because Fed. R. Civ. P. 8(e) requires court to construe pleadings as justice requires); *Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 271-72 (3d Cir. 2006) (because pleadings must be construed to do justice, pleadings need not be construed against pleader, but court should make determined effort to understand what pleader is attempting to set forth); *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 418-419 (4th Cir. 2014) (complaint alleging bystander liability was not insufficient merely because words "bystander liability" did not appear anywhere in complaint; pleaders are not required to use any "precise or magical words" in their pleadings—rather, courts must look to substance of allegations); *Garrett v. Judson Indep. Sch. Dist.*, 299 F. App'x 337, 346 (5th Cir. 2008) (pleadings must be construed to do justice; courts do not require technical forms of pleading or motions; it is enough that plaintiff pleaded sufficient facts to put defense on notice of theories on which complaint is based); *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 895 n. 3 (6th Cir. 2019) (court's function is to construe complaint to do justice; in doing so it must consider entire complaint to determine if plaintiff has stated plausible claim, including matter alleged in other counts and not incorporated by reference); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 570 (6th Cir. 2013) (district court properly construed complaint so as to do justice, by examining substance of complaint rather than labels); *Bausch v. Stryker*

Another reputable treatise trumpets similar sentiments:

> The federal rules effectively abolished the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief. The text of several of the rules, although never specifically disavowing the doctrine, makes it very plain that the theory of the pleadings mentality has no place under federal practice. Federal Rule of Civil Procedure 8(a) eliminates the concept of "cause of action"; Rule 8(d) provides that a party may set forth two or more statements of claim alternatively or hypothetically; Federal Rule of Civil Procedure 15(b) deals a heavy blow to the doctrine by permitting amendments as late as the trial and treating issues as if they had been raised in the pleadings when they are tried by the express or implied consent of the parties; and Federal Rule of Civil Procedure 54(c) provides that, except in the case of a default judgment, the "*final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings*." It also should be remembered that many federal courts have held that a complaint is sufficient against a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), if it appears from the complaint that the plaintiff may be entitled to any form of relief, *even though the particular relief he has demanded and the theory on which he seems to rely are not appropriate*.
>
> Thus, it is clear that the federal rules—and the decisions construing them—evince a belief that when a party has a valid claim, *he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage*, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining a defense upon the merits. Undoubtedly cases can be imagined in which an alteration in legal theory

---

*Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("One objective of Rule 8 is to decide cases fairly on their merits, not to debate finer points of pleading where opponents have fair notice of the claim or defense."); *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996) (substantial justice in civil rights action means complaint sufficient if fair notice given of claim and ground upon which it rests); *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107-1108 (10th Cir. 2009) (in order to do justice, court must not rely solely on labels in complaint, but must probe deeper and examine substance); *Beem v. Ferguson*, 713 F. App'x 974, 979 (11th Cir. 2018) (pleadings must be construed so as to do justice; federal rules reject approach that pleading is game of skill in which one misstep by counsel may be decisive to outcome and accept principle that purpose of pleading is to facilitate proper decision on merits; Fed. R. Civ. P. 8(e) excludes requiring technical exactness, or making of refined inferences against pleader, and requires fair effort to understand what pleader attempts to set forth); *Varnes v. Loc. 91, Glass Bottle Blowers Ass'n of U.S. & Can.*, 674 F.2d 1365, 1371 (11th Cir. 1982) (relief from default judgment required by substantial justice under both Fed. R. Civ. P. 8(e) and Fed. R. Civ. P. 1).

> would work to the prejudice of the opposing party in a way that cannot be rectified by an appropriate court order. But such cases are very rare and the district court always can invoke its discretion under Federal Rule of Civil Procedure 15 to prevent a change in the theory of the action or to permit the amendment on appropriate terms to mitigate or eliminate any possibility of prejudice.

5 FED. PRAC. & PROC. CIV. § 1219 (4th ed. 2026) (emphasis added, footnotes omitted).

In a recent decision, the Eleventh Circuit elaborated upon the foregoing principles in a similar context:

> The Federal Rules of Civil Procedure impose pleading requirements for claims, not theories of liability. Fed. R. Civ. P. 8(a); *see Johnson v. City of Shelby*, 574 U.S. 10, 11-12 (2014). . . .
>
> That does not mean, however, that plaintiffs can simply allege facts and let the district court figure things out from there. We "rely on the parties to frame the issues" by "advancing the facts and arguments entitling them to relief." *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (en banc) (quotations omitted). So a plaintiff wishing to "prevail on a particular theory of liability" must "present that argument to the district court." *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011).
>
> But when? So long as the factual basis is properly alleged, an employee can raise a [different legal] theory of liability as late as summary judgment. What is important is not *when* the theory is raised, but whether the defendant has enough notice of it. To be sure, a district court may reject new theories of liability when they are raised alongside new factual allegations such that a change would "prejudice the other party in maintaining a defense upon the merits." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1219 (4th ed. 2023). But without such prejudice, a theory of liability raised by a plaintiff cannot be rejected simply because she failed to specifically plead it in her complaint. *See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259-60 (11th Cir. 2015).
>
> This notice requirement accomplishes several purposes. For one, it gives the employer notice about what it is defending against. For

> another, it gives the district court an understanding of what it needs to decide and based on what evidence.

*McCreight v. AuburnBank*, 117 F.4th 1322, 1331-32 (11th Cir. 2024) (footnote omitted, emphasis in original).

In line with the foregoing precedent and authorities, the undersigned must examine the substance of Letson's Complaint rather than the label he affixed to the first count. Such examination reveals LSA did not offer any substantive reasons to dismiss Letson's disability discrimination claims on the merits.

The ADA forbids covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As relevant here, § 12112 further provides that an employer discriminates against an individual on the basis of a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). The plaintiff bears the initial burden of proving a *prima facie* case of disability discrimination, which requires a demonstration that he: (1) is disabled, (2) is a qualified individual, and (3) was

discriminated against on the basis of his disability. *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1179 (11th Cir. 2019) (citations omitted).[5]

Moreover, "[t]he Americans with Disabilities Act (ADA) has a[n] . . . antiretaliation provision . . . ." *Palmer v. McDonald*, 624 F. App'x 699, 702 (11th Cir. 2015) (citing 42 U.S.C. § 12203(a); 29 U.S.C. § 791(f)). To assert a retaliation claim, "[a] plaintiff must allege that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) a causal relationship between the two events exists." *Id.* (citing, *inter alia, Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998), *abrogated on other grounds by, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). "The first element . . . may be met by a request for a reasonable accommodation, which is a statutorily protected activity as long as the plaintiff has a good faith, objectively reasonable belief that he was entitled to those accommodations." *Id.* (citing *Standard*, 161 F.3d at 1328).

Letson's verified factual allegations, taken as true, establish the elements of ADA claims for discrimination and retaliation. He suffered mental limitations after a bout of COVID and a stroke in the fall of 2021. (*See* doc. 1 at ¶¶ 20-21). He informed his supervisors of his medical condition and asked for a reasonable accommodation, namely a legal assistant. (*Id.* at ¶¶ 21-23). His supervisor denied his accommodations

[5] As reflected in the current version of 42 U.S.C. § 12112(a)(1), the ADA Amendments Act of 2008 struck the wording "with a disability because of the disability of such individual" and replaced them with the terms "on the basis of disability." Pub. L. 110-325, § 5, 122 Stat. 3553.

request. (*Id.* at ¶¶ 21, 23). His physician placed him on medical leave on March 1, 2022, and his supervisor at LSA initiated termination procedures shortly thereafter. (*Id.* at ¶ 24). Ultimately, LSA discharged him from employment on March 10, 2022. (*Id.*).

Based on these allegations, which LSA has not substantively addressed in its motion, the court must construe Letson's first count, which he labelled a Title VII claim, as claims for disability discrimination and retaliation under the ADA. *See Thompson v. Allstate Ins. Co.*, 476 F.2d 746, 749 (5th Cir. 1973) ("Ancestor worship in the form of ritualistic pleadings has no more disciples. The time when the slip of a sergeant's quill pen could spell death for a plaintiff's cause of action is past. Under Federal Rules of Civil Procedure, a complaint is not an anagramatic exercise in which the pleader must find just exactly the prescribed combination of words and phrases. All that the Rules require is "'a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests . . .' *Conley v. Gibson*, 1957, 355 U.S. 41, 47[ (1957)]. . . . The Federal Rules were intended to abolish such exaltations of form over substance. . . . A complaint is sufficient if the plaintiff is entitled to relief under any legal theory."); *Coleman v. Sec'y of Veterans Affs.*, No. 6:19-cv-1303-Orl-37GJK, 2021 WL 2806142, at *3 (M.D. Fla. Jan. 21, 2021) ("At the outset, the Court notes Plaintiff's complaint doesn't clearly allege the statutory basis for his claims, although he alleges jurisdiction under Title VII of the Civil Rights Act of 1964. . . . But disability isn't a protected characteristic under Title VII . . . . So the Court will construe his claims as arising under the Americans with Disabilities Act

("ADA") . . . ." (citations omitted)); *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 853 n.3 (9th Cir. 2016) ("Garity's amended complaint pleads her disability discrimination claims as Title VII violations . . . . Garity also references violations of the 'ADA of 1990,' in her amended complaint. 'Because [Garity] appeared *pro se* in the district court, we [are to] liberally construe [her] pleadings.' . . . Accordingly, as the district court did below, we will treat Garity's self-styled 'Title VII' claims as discrimination claims under the ADA." (quoting *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005))); *Tyson v. Brennan*, No. 18-5033, 2018 WL 5927921, at *1 (D.C. Cir. Nov. 7, 2018) (holding the district court correctly construed a plaintiff's "disability discrimination and retaliation claims as arising under the Rehabilitation Act, not Title VII of the Civil Rights Act or other statutes"); *Boone v. T-Mobile USA Inc.*, No. 17-378-KM-MAH, 2018 WL 588927, at *12-13 (D.N.J. Jan. 29, 2018) (The "complaint will not be dismissed for failure to cite the specific [Fair Credit Reporting Act] subsection authorizing private rights of action. . . . Plaintiff's failure to cite the correct section of the FCRA does not require us to affirm the dismissal of her complaint so long as she has alleged facts sufficient to support a meritorious legal claim. Under the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure, in ruling on a 12(b)(6) motion 'the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.' *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (in banc) . . . ." ) (cleaned up) (citing, *inter alia*, *Gutierrez v. TD Bank*, No. 11-5533 (JLL), 2012 WL 272807, at *11 (D.N.J. Jan. 27, 2012) ("Courts will

not dismiss counts of a complaint for failure to state a claim merely because the complaint mischaracterizes legal theories or does not point to an appropriate statute or law to raise a claim for relief."); *White v. WMC Mortg. Corp.*, No. 01-1427, 2001 WL 1175121, at *1 (E.D. Pa. July 31, 2001) (permitting plaintiff's claim despite plaintiff citing to the wrong section of the statute in her complaint)); *Geldzahler v. New York Med. Coll.*, 663 F. Supp. 2d 379, 389 (S.D.N.Y. 2009) ("Defendants argue that the complaint should be dismissed because the complaint 'does not refer to Labor Law §§ 740 & 741' and thus 'does not provide the Defendants with the minimal fair notice of an alleged violation of Labor Law §§ 740 or 741 sufficient to satisfy the pleading requirements of Fed. R. Civ. P. Rule 8(a)(2).' . . . Defendants' argument is meritless. Under the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure, in ruling on a 12(b)(6) motion 'the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.'") (cleaned up, citations omitted); *Quintois v. Propak Logistics, Inc.*, No. CIV.1:08CV98, 2008 WL 2788037, at *5 (W.D.N.C. July 15, 2008) ("Applying the case law to the allegations of the Complaint, plaintiff has alleged in the text of his Second Cause of Action that he was subjected to retaliation because he had 'complained about *the* violation of his civil rights.' . . . Because plaintiff has not included a statutory reference for or better described 'the violation of his civil rights,' his pleading as well as his response requires this court (as well as defendant) to do some detective work. . . . Only through such linguistic gymnastics can this court discern the nature and basis of

plaintiff's retaliation claim, which appears to be a claim for Title VII retaliation. . . . The undersigned will, therefore, recommend that defendant's Motion to Dismiss the Second Cause of Action be denied *only* insofar as plaintiff has stated a claim for Title VII retaliation. The undersigned will further recommend that the Motion to Dismiss be granted insofar as such cause of action purports to be a cause of action for any other sort of retaliation.") (emphasis in original); *Jokinen v. Henderson*, 242 F.3d 375 (Table), at *1 (8th Cir. 2000) (reversing the district court's sua sponte dismissal of a Title VII form complaint because the plaintiff plead facts sufficient to assert a Rehabilitation Act claim despite submitting the wrong form complaint); *cf. Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 271-72 (3d Cir. 2006) (holding a claim plead as simply "negligence" asserted both a wrongful death claim and a survival action, which constituted independent causes of action under the applicable state law); *Garrett v. Judson Indep. Sch. Dist.*, 299 F. App'x 337, 346 (5th Cir. 2008) ("Although she does not delineate her First Amendment retaliation claim as a distinct 'count' in her complaint, neither did she delineate her age claim, which was listed in the same paragraph as the other Title VII claims and which the district court recognized as a[] cognizable ADEA claim. . . . The fact that she did not specify that her claim was brought under § 1983, much as she had not specified that her age claim was appropriately brought under the ADEA, is of no moment."); *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107-1108 (10th Cir. 2009) (construing a negligent misrepresentation claim as also stating a claim for fraudulent misrepresentation); *Ryan v. Ill. Dep't of Child. & Fam. Servs.*, 185 F.3d 751, 764 (7th Cir. 1999) ("We have

consistently held that plaintiffs are not required to plead legal theories. . . . [A plaintiff] cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all."); *Wiedeman v. Canal Ins. Co.*, No. 1:15-cv-4182-WSD, 2017 WL 2311435, at *2 (N.D. Ga. May 25, 2017) ("Plaintiff's reliance in his Amended Complaint upon a closely related, but ultimately incorrect, statute is not fatal to Plaintiff's claim.").

Furthermore, construing Letson's first count as an ADA claim will not "prejudice [LSA] in maintaining a defense upon the merits." *McCreight*, 117 F.4th at 1332. Letson clearly alleged disability as the reason LSA discriminated against him in both his EEOC Charge and the Complaint's factual allegations. (*See* doc. 1 at ¶¶ 6, 8, 10, 12-18, 21, 23-24, 29, 35; *see also id.* at 13). Moreover, Letson exhausted his disability discrimination claims with the EEOC, as his initial EEOC charge alleged violations of the ADA. (*See id.*); *cf. Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) ("Because of th[e] exhaustion requirement, 'a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" (quoting *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004))). In addition, in the Report of Parties' Planning Meeting (doc. 18), filed jointly pursuant to Federal Rule of Civil Procedure 26(f) and court order, the synopsis of Letson's claims delineates he "was discriminated against based on his disability when he was denied reasonable accommodation and discharged, in violation of the Americans with Disabilities Act of 1990, as amended" (albeit, a prior paragraph in the same synopsis referenced Title VII as the basis for a remedy to "a continuing

series of discriminatory conduct against him culminating in the termination of his employment because of his disability, and retaliation because of him having complained about unlawful discrimination"). (Doc. 18 at 1-2).

Therefore, Letson's disability discrimination allegations represent a sufficient factual basis to assert ADA discrimination and retaliation claims. And because LSA's motion only challenges the mislabeling of the ADA claims, not their underlying substantive merits, those ADA claims persist in this action.

## III. Letson Failed to File His State Law Claims Within the Two-Year Statute of Limitations.

Letson's remaining claims for relief consist of state law, personal injury torts: intentional infliction of emotional distress (IIED); invasion of privacy and false light; and defamation, libel, and slander.

Alabama imposes a two-year statute of limitations for "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in" the pertinent statute. Ala. Code § 6-2-38(l). The statute further provides that "[a]ll actions of libel or slander must be brought within two years." Ala. Code § 6-2-38(k). As impending analysis portrays, Letson's tort claims fall within the ambit of § 6-2-38(k) or (l).

Alabama case law interchangeably refers to an IIED claim as a "tort-of-outrage" claim. *See Deaton v. S. Highland Child Dev. Ctr., Inc.*, 405 So. 3d 244, 255 (Ala. 2024); *see also Archie v. Enter. Hosp. & Nursing Home*, 508 So. 2d 693, 694-95 (Ala. 1987). The

Supreme Court of Alabama has held this tort "come[s] within the provisions of § 6-2-38(l), whether as a . . . tort not elsewhere enumerated or as coming within the indirect trespass-on-the-case class of torts." *Archie*, 508 So. 2d at 695; *see also id.* ("Thus, we hold that the tort of outrage or intentional infliction of emotional distress is governed by the two-year statute of limitations found in § 6-2-38(l) . . . ."); *Hoff v. Goyer*, 160 So. 3d 768, 772 (Ala. Civ. App. 2014) ("[T]he statute of limitations for the tort of outrage is two years . . . ." (citation omitted)); *Crittenden v. Walgreen Co.*, No. 7:24-cv-356-GMB, 2024 WL 3251728, at *3 (N.D. Ala. June 21, 2024).

A false light claim constitutes a species of the invasion of privacy tort. *See Reg'l Prime Television v. South*, 399 So. 3d 220, 240 (Ala. 2024) ("The tort of invasion of privacy consists of four limited and distinct wrongs: '. . . (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye . . . .'" (quoting *S.B. v. Saint James Sch.*, 959 So. 2d 72, 90 (Ala. 2006), *overruled on other grounds by, White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009))). The two-year statute of limitations delineated in § 6-2-38(l) applies to invasion of privacy claims. *See Chambless v. La.-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007).

Furthermore, § 6-2-38(k) applies to Letson's claim for defamation, libel, and slander, which "must be brought within two years." *See also Hollander v. Nichols*, 19 So. 3d 184, 194-95 (Ala. 2009); *Garmon v. Am. Bar Ass'n J.*, No. 4:24-cv-912-CLM, 2025 WL 467460, at *2 (N.D. Ala. Feb. 11, 2025).

LSA terminated Letson's employment on March 10, 2022. (Doc. 1 at ¶ 24). The

statement of facts in Letson's Complaint, as well as Letson's general claims regarding the state torts, do not allege LSA engaged in any conduct against Letson after his termination.[6] Thus, the two-year statute of limitations on these claims expired, at the latest, on March 10, 2024. Letson, however, filed his Complaint on November 26, 2024. (*See* doc. 1). Therefore, Letson cannot obtain relief on the state tort claims as he did not file these claims within the applicable window. "And because timeliness cannot be corrected, the dismissal [of these claims] will be with prejudice." *Garmon*, 2025 WL 467460, at *2.

## CONCLUSION

Based on the foregoing analyses, the court **GRANTS** in part LSA's motion as to Count I's Title VII claims; **DENIES** the motion as to Count I's disability discrimination and retaliation claims; and **GRANTS** the motion as to the state law claims proffered in Counts II-IV. Thus, the court **DISMISSES** Counts II, III, and IV **WITH PREJUDICE**.

**DONE** and **ORDERED** this 9th day of September, 2026.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE

[6] Moreover, to date, Letson has not responded to LSA's brief asserting the following proposition: "the Complaint does not allege any actions after March 10, 2022, the date of his termination. Accordingly, on the face of the Complaint, there are no allegations of tortious conduct by Defendant occurring after that date . . . ." (Doc. 23 at 9 n.3). Therefore, based on the undisputed facts before the court, the undersigned discerns no indication the statute of limitations on the asserted causes of action accrued after March 10, 2022.